*AUSA O'Malley/Salem*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### GREENBELT DIVISION

IN THE MATTER OF THE SEARCH )
OF THE ITEMS DESCRIBED AS: )    CRIM. NO. 15-1520 JKS
)
Electronic Devices and Media located at )
Federal Bureau of Investigation )         _____ FILED _____ ENTERED
185 Admiral Cochran Drive, Suite #101, )       _____ LODGED _____ RECEIVED
Annapolis, Maryland, 21401 )

AUG 17 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
_____ DEPUTY

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jacqueline Dougher, ("Your Affiant"), a Special Agent (SA) with the Federal Bureau

of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and

state as follows:

1.      Your Affiant has been a Special Agent (SA) with the FBI since October 14, 1997.

I am currently investigating federal violations concerning child pornography and the sexual

exploitation of children.  I have gained experience through training in seminars, classes, and

daily work related to conducting these types of investigations.  Specifically, I have obtained and

provided FBI Crimes Against Children Online Undercover training.  I have also participated in

the execution of numerous search warrants, of which many have involved child exploitation

and/or child pornography offenses and included the search and seizure of computers, computer

equipment, software, and electronically stored information. As a federal agent, I am authorized

to investigate violations of laws of the United States and to execute warrants issued under the

authority of the United States.

2.      The statements contained in this affidavit are based in part on my investigation of

this matter, investigation by FBI Headquarters Major Crimes Coordination Unite (MCCU), and

on information provided by other law enforcement agents and officers. Because this affidavit is being submitted for the limited purpose of securing authorization for a requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause. There is probable cause to believe the items more fully described in Attachment A, and specified in Attachment B hereto, contain evidence, fruits, and instrumentalities of violations of U.S.C. §2252A including the possession, receipt, transportation, and/or distribution of child pornography, which is presently located and/or contained in the target items, including but not limited to computers, external hard drives, and other similar electronic devices.

## CHARACTERISTICS OF INDIVIDUALS THAT DISTRIBUTE, RECEIVE AND POSSESS CHILD PORNOGRAPHY

3.      I know from my training and experience that the following characteristics are prevalent among individuals who collect child pornography:

a.      The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.      The majority of individuals who collect child pornography collect explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their sexual fantasies involving children.

c.      The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or via the Internet, to share information and trade

depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, peer-to-peer, e-mail, bulletin boards, internet relay chat, newsgroups, instant messaging, and other similar vehicles.

        d.      The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

        e.      The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or on scraps of paper.

        f.      The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collection of illicit materials from discovery, theft, and damage.

### INVESTIGATION OF MESSAGE BOARD SITES

        4.      A message board (also known as a bulletin board or forum), is an online discussion website that allows users to hold conversations via posted messages. A single

message board may contain numerous forums or sub-forums.  Each of those forums may contain dozens or hundreds of topics, with each topic containing numerous posted messages.

5.      Message boards can be public or private and can have varying degrees of security or vetting procedures established by the administrator or moderator.  Posts generally may contain text, images, videos, or links to other websites.

6.      Each new discussion is referred to as a "topic."  Within each topic is the "thread," which contains all of the posts to that particular topic.  The first post to each thread typically contains the topic to be discussed, the actual files themselves (such as images or videos), or links to external websites.  Members may post images or videos through an external website in order to provide other members with larger or more images and videos than they would be able to post in a thread.  External websites, many of which are hosted overseas, offer members better privacy and protection from law enforcement detection. Other members can then post comments or replies to the original post, or can post additional files.  These posts are normally found below the initial post in the thread.

7.      Aceboard is a company that provides free message boards to users.  Upon establishing a message board, the administrator or creator of the board is provided the Uniform Resource Locator (URL) of that particular board, which is normally the name of the board following by aceboard.com; i.e. http://examplename.aceboard.com.

8.      Administrators may alter various settings on the board, including security settings, to ensure the board will operate in a specific way.   Depending on security settings of the particular board, an individual can access the board by either receiving an invitation, usually via e-mail, or by simply typing in the URL and registering directly.  Users are generally required to provide a unique member name, password, and valid e-mail address to access the board.

Additional information, such as gender, date of birth, or country of origin may also be provided. Once a member registered on the board, he would receive a confirmation email acknowledging membership and confirming the user's password.

9.      Aceboard is headquartered in France and all data associated with its message boards is hosted on servers located in France.

## INVESTIGATION OF SAMS PLACE

10.      The board, http://sams-place.aceboard.com (Sam's Place), was created in approximately June of 2009.  The administrator of the board utilized the screen name "samantha" with an email address of jacksonsamantha@yahoo.com.  In order to gain access to Sam's Place, users were required to register by providing a unique member name, password, and valid e-mail address.  Once registered, users had access to all of the content on the board, including all forums, topics, and threads.

11.      In approximately February 2011, the Innocent Images Operations Unit (IIOU) of the FBI was investigating a separate Aceboard message board, http://gables.aceboard.com (Gables), in regards to the distribution of child pornography.  On February 16, 2011, Gables was permanently deactivated by Aceboard.

12.      On February 16, 2011, Special Agent Daniel E. O'Donnell conducted a search of publicly available data via the Internet to determine if any reference to Gables' termination could be found due to its aforementioned deactivation.  Although no specific reference was identified, a "Google" search of the Gables board returned  results which  revealed several additional Aceboard message boards.  One of these boards was Sam's Place.

13.      Based upon the above information, on February 16, 2011, SA O'Donnell accessed the website "http://sams-place.aceboard.com" and successfully registered to the board using an

undercover member name and password.  On February 16, 2011, SA O'Donnell received an e-mail from forum@aceboard.net stating that the registration had been accepted and the account had been enabled.

14.    On February 16, 2011, SA O'Donnell accessed Sam's Place, logged onto the board, and reviewed the section entitled "Administrator welcome message," which was displayed on the Home page of the board.   This welcome message stated the following:

Please everyone could you all try to post topics in the correct section so I don't have to move them.  Welcome all.

1.    No child porn (this includes masturbation or any other sexual activity with under 18's).  Over 18's I don't care, post what you like there.

2.    All members must post (No Lurkers)

3.    please no boy posts, this is a forum for girls, there are other forums out there for boys also please don't hotlink it just kills posts way to quickly. To all members, I have started deleting all members who have been members for more than 5 days and have never made a post of any kind and I will continue to do this. If you are going to be a member you must post something.

3.    (VERY IMPORTANT) Please post a preview to all downloads vids or pics so we can see what they are before downloading them

4.    please try to put either nude or NN in the title if your post so people will know in advance.

5.    NO POSTING nasty or derogatory remarks about other members, this gets you an automatic deletion from the forum. This applies to everyone, leave

your personal feelings outside this forum, everyone here is judged for
what they do here nothing else.

6.     Please No chat links, as all underage chat rooms are full of cops, and thus
places to stay away from.

I just deleted altercomp02 for hotlinking other peoples posts, this kind of
behavior will not be tolerated.

There are a lot of members here who are not posting. It is expected that
you post at least a couple times a month, I am soon going to start deleting people
who havn't posted recently, you know who you are.

Please people do not make your posts as reply's to other peoples posts,
start your own threads in the correct areas of the forum, and start a new thread for
each different topic.

From now on I am just going to delete posts that are hotlinked, wether
they are good posts or not, everyone should know not to hotlink.

15.    On February 16, 2011, SA O'Donnell then reviewed the various forums listed on
the Home page of Sam's Place.  This review revealed the following forums:

- under 18 galleries
- over 18 galleries
- 3d art &other drawn art or anime
- under 18 passes
- over 18 passes
- Sandra
- Ultra Model
- links

- requests
- under 18 downloads
- over 18 downloads
- online vids
- candid or amateur pics or vids
- announcements or discussions

A total of approximately 8,065 posts had been made to the above forums.

16.     A further review of the above forums revealed that approximately 5,771 of the 8,065 posts had been made to the three forums entitled "under 18 galleries," "under 18 passes," and "under 18 downloads."  Only 404 of the 8,065 posts had been made to the forums "over 18 galleries," "over 18 passes," and "over 18 downloads."

17.     A review of topics within the three forums "under 18 galleries," "under 18 passes," and "under 18 downloads," as well as topics within additional forums, revealed several member names that were identical to member names identified within the Gables board.  Further, numerous images depicting child pornography and child erotica were also identified.

18.     SA O'Donnell continued to monitor Sam's Place over the next several months.  By late August 2011, the total number of posts had increased to over 13,000, with over 9,400 having been made to the three forums "under 18 galleries," "under 18 passes," and "under 18 downloads."  Further, by late August 2011, SA O'Donnell had downloaded thousands of image and/or video files depicting child pornography of prepubescent females.

19.     Members could post image and video files to the message board by the following methods:

a.     Members could directly post an image or video file(s) to the board in a post to a topic which would appear on the board for all members to see.

8

      b.      Members could post a hyperlink, or "link," to an external website on the Internet outside of Sam's Place where the image or video file(s) could be retrieved. Examples of typical external website are file-sharing websites such as www.megaupload.com or www.cash-file.com. However, many other websites could be used as well.

      c.      All other members could then post comments or replies within the topic containing the above link to the actual image or video file(s). These comments or replies could also include additional image or video file(s) or links to other websites.

20. The second method was advantageous as it allowed members to post a larger volume of files then they would be able to post directly on the board. In Sam's Place, this was the primary method in which members posted image or video files. When using this method to post, members sometimes also posted "preview" links or images for other members to view, if they chose, prior to accessing the file link.

21. The second method also provided additional security as members were instructed to alter the Uniform Resource Locator (URL) upon posting a hyperlink so the link would not be "hotlinked" (meaning an active link); thereby requiring members to manually enter the URL in an Internet browser, and then make the appropriate changes for the URL to be valid. Typically this was accomplished by members posting "hxxp," "htp," or "htttp" instead of "http" at the beginning of the URL.

22. In order for members to access these links, download the contents, and view the actual image or video file(s), they were required to complete the following actions for each file:

a.    The member manually enters the posted URL into an Internet browser and makes any appropriate changes for the URL to be valid.

b.    The valid link then directs the member to the actual website, which was typically a file-sharing site such as www.sharebee.com, www.megaupload.com, or www.rapidshare.com; along with others.

c.    The image or video file(s) contained on that website was usually in a compressed form using the ".rar" (Roshal Archive) or ".zip" formats. For example, a typical file name would be: "ExampleName.rar"

d.    The member downloads the file onto his/her computer. In order to open the file, the member must have the appropriate software installed on the computer. Typical software is WinRAR or 7-Zip.

e.    In many cases, the downloaded file was also encrypted and required a password to open. Passwords were generally included in the original post along with the link. This required the member to either copy the password from the post and paste it into the appropriate section on his/her computer, or manually enter the password.

f.    Only after these steps were completed could the member view the contents of the image or video file(s) contained in the link.

23.    Investigation of the message board revealed numerous posts that contained links to child pornography.

24.    Contrary to the listed rules of the message board, the image and video files shared via the board depict the sexual exploitation of minors. During the investigation, law enforcement viewed thousands of image and video files depicting minors engaged in sexually explicit conduct

uploaded to, or linked from, the http://sams-place.aceboard.com message board. The acknowledged purpose and security measures of the message board were established to permit a secure means of trafficking in images of child pornography.

25.     In addition to members who posted the actual image and/or video files via links, members who chose to access and comment on those image and/or video files were required to manually conduct a series of deliberate actions in order download and view the files.

26.     If the images were posted directly to the board, members who chose to comment were able to view the images without having to access an external website. However, in order to view any content within the board, members were required to register with a valid e-mail address, sign into the board using their unique member name and password, click on the desired forum, and then click on the desired topic within that forum prior to viewing, creating, or commenting on posts. No topics, threads, images, videos, links, or comments were available to non-members.

27.     Due to the above, in early August 2011, SA O'Donnell sent an inquiry to an International Task Force Officer (ITFO) of the Innocent Images International Task Force (IIITF) in Paris, France for information on Sam's Place. This ITFO had direct access to the user connection records at Aceboard.

28.     On August 18, 2011, the ITFO provided user connection records for Sam's Place in a spreadsheet format. The user connection records provided were as follows: (a) all member names for members who made at least one post to Sam's Place; (b) text of all posts made by members; and (c) IP addresses with time stamps corresponding to all posts made by members.

## INVESTIGATION OF "SIGNMAN"

29.     On or about July 26, 2011, an individual utilizing the screen name "SIGNMAN,"
joined the http://sams-place.aceboard.com message board as a member.  From the creation of
"SIGNMAN's" account on the message board on July 26, 2011 to the date the board was
deactivated on October 04, 2011, "SIGNMAN" made 10 posts to the board, of which SA
O'Donnell was able to capture seven (7) posts. Some examples of the captured posts by
"SIGNMAN" were as follows:

a.      On 08/31/2011, "SIGNMAN" created the topic entitled "Nastya 4 sets"
and posted a link to a filenamed "Nastya.7z", which contained 301
images, the majority of which depicted a prepubescent female in various
states of undress and nude posing to expose her genitals. At the bottom of
a majority of the images is the URL:  www.ruslolitas.biz.

b.      On 08/31/2011, "SIGNMAN" created the topic entitled "pigtails" and
posted a link to a file named "Pigtails.7z", which contained 96 images, the
majority of which depicted a pubescent female in various states of undress
and nude, posing and partially exposing her genitals.

c.      On 08/31/2011, "SIGNMAN" created the topic entitled "Motovationals"
and posed a link to a file name "Motovationals.7z". The majority of the
images appear to be child erotica, however each of the images has a
motivational caption, for example: An image of a flower girl in a dress
exposing her underwear. At the bottom of the image it states the
following: "Flower Girl" "Tonight you will show her who is the best
man."

d.      On 08/31/2011, "SIGNMAN" created two (2) additional topics containing
links to two (2) additional files named "peeing" and "Dark Stuff,"
however, these files were not accessible.

30.     Administrative subpoenas were issued to Internet Protocol (IP) address
68.50.111.68, associated with nine (9) out of the 10 posts, which returned subscriber information
as Sean Sullivan, 2709 Calgary Avenue, Kensington, Maryland, 20895. Another IP address was
identified as accessed by "SIGNMAN" for one (1) of the 10 posts, 184.191.213.179.

Administrative subpoena results from Cox Cable showed the subscriber associated with the aforementioned IP address was: Action Signs, 8455 Tyco Road, Vienna, Virginia, 22182, telephone number (703) 821-2358. The point of contact was listed as Steve Baker. A check of law enforcement databases indicated Baker's address was 2706 McComas Avenue, Kensington, MD, which is the same neighborhood as Sullivan's address. Further administrative subpoenas served to both Comcast and Verizon failed to identify any Internet subscriber at 2706 McComas Avenue, Kensington, Maryland. Surveillance conducted in the vicinity of both addresses showed open wireless in the vicinity of Sullivan's address, however attempts to contact Sullivan were negative and subsequent surveillance revealed all of the wireless access points in the neighborhood as secure. Your Affiant was unable to definitively determine at the time which individual accessed the site and/or uploaded and/or download the child pornography.

31.     On July 8, 2015, Your Affiant and SA Wilson, conducted a "Knock and Talk" interview with Baker at his business, Action Signs, 8455-E Tyco Road, Vienna, Virginia, telephone number (703) 821-2358. Baker was advised he was not under arrest and voluntarily spoke with the Agents. Baker provided his current home address as 2706 McComas Avenue, Kensington, Maryland, and was unable to recall if or what Internet service he may have had in 2012, but stated he now has Cox Cable as his Internet provider at his residence. Baker confirmed that the internet at his home is secured and only his family has access to the Internet. Baker confirmed he also has Internet service provided by Cox Cable at work. Baker is the only one at work who has access to the Internet on his work computer or his laptop; his one employee does not have access.

32.     Baker was asked if he knew why the interviewing Agents were there and stated "I have child porn on my computers" and "I have been waiting for someone to come." Baker

13

confirmed he had child pornography on both his work and home computers and downloaded child pornography at work and at home.

33.     Baker further stated that he had child pornography downloading in the back room of Action Signs during the interview, and asked the Agents if they would like to see it.  Baker stated "I'm actually downloading a file right now", "Do you want to see?", and "come on [indicating with his arm to the Agents to follow him to the back room] I'll show you."

34.     The interviewing Agents began to read Baker his rights and then Baker showed the Agents his laptop computer which appeared to be in the process of downloading a file.  The Agents finished reading Baker his rights, Baker advised he understood each right as it was read to him, Baker read the Advice of Rights form, signed the form, and agreed to voluntarily continue speaking with the Agents.

35.     The Agents photographed the screen of the HP Pavilion laptop computer which appeared to show a file in the process of downloading.  Baker was provided with a Consent to Search Computers form, advised it was voluntary and that he did not have to sign it.  Baker read the form, voluntarily signed it ("First Consent Form") and permitted the agents to take the laptop and an external hard drive, described below in paragraph 37, both of which the agents informed him they would seek to search at a later time.  Agents also hand-wrote into the consent the right to search the laptop at Baker's residence, which is further described in paragraph 38 below. Each open window on the laptop was photographed, which revealed several sites which appeared to access and/or possibly contain child pornography.  Baker admitted he had been downloading child pornography for approximately 10 years, does not send and/or trade child pornography, chat on line or send child pornography via e-mail.  Baker admitted that he masturbates to the images and videos he downloads.  Baker stated he saved all of the child pornography he has

14

downloaded in the past 10 years or so, and estimated that he has a child pornography collection that is approximately one (1) terabyte in size.

36.     Baker admitted he accessed imgsrc.ru which, based on your Affiants knowledge and experience, is a site known to host child pornography, and also accessed the following site: www.lk-dolores.biz/viewtopic.php.  Baker explained he accessed a site which had a list of child pornography link files which were displayed. Baker picked a file to download from the list. Baker used a different site, DEP file, where the files were separated into smaller files, clicked on each one of the smaller files, and used the software "7z" to reassemble the files into one (1) file. Baker then viewed the files with software such as VLC.

37.     Baker stated that he had a laptop computer at his residence which also contained child pornography files.  Baker then voluntarily drew a diagram of an Ikea closet which contained drawers located in his bedroom.  The doors to the closet open and there are drawers inside the closet.  Baker indicated that underneath the bottom drawer is where the laptop is located and referred to it as his secret laptop.  Baker then took the Agents to his briefcase and provided your Affiant with a 320 GB Seagate external hard drive (this is the hard drive that was included on the First Consent Form described above in paragraph 35).  Baker explained he saved his downloaded child pornography from work to the external hard drive, and used the Seagate external hard drive to transfer the child pornography to his laptop at home.

38.     Your Affiant and SA Wilson traveled to Bakers residence, 2706 McComas Avenue, Kensington, Maryland and conducted a voluntary interview of Diane Baker (Diane), Baker's wife.  Diane told your Affiant she received a call from Baker while the Agents were traveling to her residence.  Baker told Diane about his discussion with the Agents at work. Diane initially voluntarily verbally agreed to a search of their master bedroom, and subsequently

voluntarily signed a Consent to Search form for the master bedroom. Diane initially provided the Agents with a Toshiba laptop she stated she found underneath their bed. During the consent search of the master bedroom, agents searched an Ikea closet in the master bedroom, and when the bottom drawer was lifted up, a computer was found under the drawer on the floor. This computer   Also found during the search were two (2) external hard drives, two (2) other laptop computers, notes and a DVD. Diane voluntarily signed a Consent to Search Computers for the items found at her residence ("Second Consent Form"). In all, the agents found a total of 4 computers in the residence during the consent search, as well as the external hard drives, notes and DVD. The agents informed Diane that they would seek permission to search these items at a later time.

## CONCLUSION

39.     Based upon the information above, I respectfully submit that there is probable cause to believe that violations of Title 18 Sections 2252A(1), (2), and (5)(B) (including, possession, receipt,  transportation, and/or distribution of child pornography) have been committed and that evidence of those violations will be found in the electronic devices listed in Attachment A. Therefore, I respectfully request that the attached warrant be issued authorizing the seizure of the items listed in Attachments A to search for the items listed in Attachment B.


Special Agent Jacqueline Dougher
Federal Bureau of Investigation


Subscribed and sworn before me this 20th day of July 2015.

Honorable Jillyn K. Schulze
United States Magistrate Judge

## ATTACHMENT A

## ITEMS TO BE SEARCHED

The items seized by your Affiant and listed below, which are currently secured within the

FBI Baltimore Division, Annapolis Resident Agency, located at 185 Admiral Cochran Drive,

Suite #101, Annapolis, Maryland, 21401. They are described as follows:

1. HP PAVILION G6 LAPTOP WITH POWER CORD
   MODEL NO: Pavilion G6-1D48DX
   MICROSOFT WINDOWS 7 NO: 584037-001

2. RED SEAGATE FREE AGENT GO EXTERNAL HARD DRIVE WITH USB CORD
   SERIAL NO: 2GE3BCRL

3. WESTERN DIGITAL MY PASSPORT EXTERNAL HARD DRIVE
   SERIAL NO: WX11A3317784

4. WESTERN DIGITAL EXTERNAL HARD DRIVE
   SERIAL NO: WXEY06668967

5. DELL LAPTOP COMPUTER WITH A STICKER ON THE FRONT WITH THE
   NAME: STEVE BAKER AND THE DATE: 06/23/2014
   SERVICE TAG: 1MMH4Z1

6. RED GATEWAY LAPTOP COMPUTER
   MODEL NO: W350A
   MICROSOFT VISTA NO: X14-39682

7. DELL INSPIRON 14z LAPTOP COMPUTER
   SERVICE TAG: DJV7QT1

8. TOSHIBA SATELLITE LAPTOP COMPUTER WITH POWER CORD
   SERIAL NO: 2F07611__. The last numbers are obscured by a scratch and cannot be
   read.

9. ONE (1) BARELY LEGAL DVD LABLED: BABY FAT 2 INNOCENCE #6
   TWO (2) PAGES OF NOTES

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

All records, documentation, images, videos, or other data contained in the items described in Attachment A, including the following items to be seized which constitute evidence of violations of Title 18 U.S.C. §§ 2252A(1), (2), and (5)(B):

1.      Any and all notes, documents, records, or correspondence pertaining to child pornography as defined under Title 18 U.S.C. § 2256(8).

2.      Any and all correspondence, computer files, or other data identifying persons transmitting, receiving or possessing, through interstate commerce including by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 U.S.C. § 2256(2).

3.      Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Provider.

4.      Any and all visual depictions of minors.

5.      Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18 U. S.C. § 2256(2).

6.      Evidence indicating the user's state of mind as it relates to the crime under investigation within this warrant.

7.      Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18 U.S.C. § 2256(2).

8.      Any and all records relating to persuading, inducing, enticing or coercing any minor to engage in any sexual activity in violation of the law.

9.      For any computer, computer hard drive, or other physical object upon which computer data can be recorded (hereinafter, "COMPUTER") that is more fully described in Attachment A:

a.      evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.      evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.      evidence of the lack of such malicious software;

d.      evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e.      evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

f.      evidence of the times the COMPUTER was used;

g.      passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h.      documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i.      contextual information necessary to understand the evidence described in this attachment.

2